```
1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION

3    UNITED STATES OF AMERICA,        Case No. 1:19cr260
                                      Akron, Ohio
4              Plaintiff,             November 13, 2019

5         vs.

6    ERIC D. BURROWS,

7              Defendant.

8
                     TRANSCRIPT OF PROCEEDINGS
9            BEFORE THE HONORABLE JOHN R. ADAMS
                 UNITED STATES DISTRICT JUDGE
10

11                        SENTENCING

12

13   APPEARANCES:

     For the Government:       Brian S. Deckert
14                             Office of the U.S. Attorney
                               Suite 400
15                             801 Superior Avenue, W
                               Cleveland, Ohio  44113
16                             216-622-3873

17
     For the Defendant:        Leif B. Christman
18                             2000 Standard Building
                               1370 Ontario Street
19                             Cleveland, Ohio  44113
                               (216) 241-5019
20

21

22

23

24

25
```

1

2

3    Court Reporter:              Lori Ann Callahan, RMR-CRR
                                  United States District Courthouse
4                                 Room 568
                                  2 South Main Street
5                                 Akron, Ohio  44308
                                  (330) 819-8676
6

7

8

9

10   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<pre>
1                    P R O C E E D I N G S

2                          -  -  -

3              THE COURT:  For the record, the court has before

4     it today Case Number 1:19cr260.  The case is United States

5     of America versus Eric D. Burrows.

6              We're here today for sentencing.

7              Counsel for the government, are you ready to

8     proceed?

9              MR. DECKERT:  Yes, Your Honor.  Good morning.

10    Brian Deckert on behalf of the United States.  Seated with

11    me at counsel's table is Michael Deterling of the Department

12    of Homeland Security Investigations.

13             THE COURT:  Thank you.  Counsel for the defendant?

14             MR. CHRISTMAN:  Good morning.  May it please the

15    court.

16             Leif Christman on behalf of Eric Burrows.  We are

17    prepared to go forward this morning.  Thank you.

18             THE COURT:  Thank you.  Mr. Burrows, did you go

19    over the presentence report that was prepared to assist me

20    in deciding your sentence?

21             THE DEFENDANT:  Yes, I did, Your Honor.

22             THE COURT:  Counsel, have you reviewed the report

23    with your client?

24             MR. CHRISTMAN:  Yes, I have, Your Honor, multiple

25    times.
</pre>

1           THE COURT:  The report indicates there's no

2   unresolved objections by the government, none by the

3   defendant.

4           Counsel for the government, any additional

5   objections you would like to raise at this time?

6           MR. DECKERT:  No, Your Honor.

7           THE COURT:  Counsel for the defendant?

8           MR. CHRISTMAN:  No, Your Honor.

9           THE COURT:  The court, of course, is required to

10  properly calculate the advisory guidelines in this matter.

11  There's a guideline calculation set forth in the report.

12  The calculation begins at page 7.  At the bottom, there's a

13  base offense level at paragraph 21 for this offense of 22.

14          There's specific offense characteristics or

15  enhancements or reductions, as the case may be, in paragraph

16  22.

17          There's a downward adjustment of two levels here

18  because it appears that the defendant, at least there's no

19  indication, trafficked or distributed images of child

20  pornography or videos.

21          There's a two-level enhancement because the

22  material involved a prepubescent minor who has not attained

23  the age of 12.

24          Paragraph 23, a four-level enhancement for

25  sadistic or masochistic conduct.  And the details are set

1      forth there.  I won't spread them out on the record.

2              Paragraph 25, a two-level enhancement for the use

3      of a computer, and a five-level enhancement because the

4      offense level involved more than 600 images.  Here the

5      defendant possessed over 9,500 images and 52 videos, a

6      five-level enhancement is called for and, therefore, we have

7      a total offense level of 33.

8              It appears there was a -- somewhat untimely, but

9      there was filed at some point an acceptance of

10     responsibility statement.

11             Does the government seek acceptance at this time?

12             MR. DECKERT:  Your Honor, we would make that

13     motion.

14             THE COURT:  We will note that.  There will be a

15     downward adjustment of three levels for acceptance.

16             The total offense level, therefore, becomes a 30.

17             The defendant has a criminal history, which is

18     spelled out at paragraphs 36 through 38.  It appears they

19     are two driving under the influence cases and a domestic

20     violence.  He has one point.  So his criminal history

21     category is, therefore, a I.

22             Under the advisory guideline, 135 to 168 months is

23     the advisory guideline range.

24             Counsel for the government, do you have any

25     objection to the court's custody guideline calculation?

1    MR. DECKERT:  No objection, Your Honor.

2    THE COURT:  Counsel for the defendant?

3    MR. CHRISTMAN:  No objection, Your Honor.

4    THE COURT:  I would also note that the additional

5    guidelines that apply; supervised release of five years to

6    life; ineligible, of course, for probation.  There is a fine

7    that is not recommended here.  Special assessment of $300,

8    and the JVTA assessment of $15,000 is also recommended here

9    at this time.

10    Any other additional objection to the court's

11    advisory guideline calculation, counsel for the government?

12    MR. DECKERT:  No objection, Your Honor.

13    THE COURT:  Counsel for the defendant?

14    MR. CHRISTMAN:  No, Your Honor.

15    THE COURT:  Having said that, the court would note

16    I've read Mr. Christman's sentencing memoranda.  I am

17    familiar with all the arguments set forth therein.  I also

18    have a sentencing memoranda submitted by the government, as

19    well, that I've reviewed and considered.

20    Having said that, counsel for the defendant, what,

21    if any, argument do you wish to make?

22    MR. CHRISTMAN:  Thank you very much, Your Honor.

23    May it please the court.

24    I know the court has read the sentencing

25    memorandum I filed on Mr. Burrows' behalf.  It is extensive.

1    It does outline all of the arguments that I would make on

2    his behalf.

3            I would say, in addition, Your Honor, that

4    Mr. Burrows certainly has been open, honest and forthright

5    with counsel.  He has accepted full responsibility for his

6    actions.  He certainly showed genuine remorse in the seven

7    months I had an opportunity to represent him in the case.

8            I would note that he has been on pretrial release

9    for seven months.  He's abided by all terms and conditions

10   of pretrial services placed upon him.  He has participated

11   in counseling at Psych and Psych in Elyria.  I believe that

12   he has gained some insight as to the mindset that allowed

13   him to fall into the activities that bring him before the

14   court.

15           Mr. Burrows is a father of three children.  He's a

16   hard working individual.  He's worked his entire life.  He

17   has an auto body shop in Elyria.  His youngest son has

18   followed him into that business, and he's known in the

19   community as a person that will lend a hand to anybody that

20   needs help.

21           I've heard stories from not only my client, but

22   his son and some others that, you know, he's not a bottom

23   line guy when it comes to making money.  If somebody needs

24   money, he's there to help them.  His brother certainly had

25   those same sentiments.  This isn't a person that sets out to

1   hurt people, to harm people.  His nature is to help people,

2   which is obviously a conflict in his viewing the pornography

3   that he did view.

4            He does understand that that does harm people,

5   that viewing that -- the images facilitate the need for that

6   industry to produce more and that he is part of the problem

7   by participating in the viewing.

8            I do think that it's important to know that he

9   didn't distribute, which is accounted for in the guidelines

10  by a two-level reduction.  In many of the enhancements that

11  do come into this type of case, as the court is aware,

12  pretty much fall in the heartland of the typical case, you

13  know, an enhancement for use of the computer.  The

14  guidelines were promulgated prior to the proliferation of

15  the Internet and the very vast majority, 90-some percent of

16  this type of case is somebody who has viewed this material

17  on the Internet.

18           So we would ask the court to consider downward

19  departures for the arguments outlined in the sentencing

20  memorandum with respect to enhancements that really

21  encompass this type of behavior in a typical type of

22  offender.

23           I would suggest to the court that this is the type

24  of person, with a shorter prison sentence and possibly

25  extensive supervised release, would not be a danger to

1    reoffend, would not be a danger to the community, would be

2    able to go back and try to pick up the pieces of the life

3    that he's going to leave behind for a substantial period of

4    time, even with a lower sentenced individual who has not

5    been separated from his family before, who has not

6    previously been incarcerated.

7         There's -- I would suggest to the court a chance,

8    with extended incarceration, to not come out as a better

9    person with the type of people that you're going to be with.

10   Now, he knows he deserves a punishment for what he did.  He

11   does accept responsibility for that, but we would ask the

12   court to consider all those things in mitigation, and he is

13   prepared to accept the judgment of the court.

14        Thank you.

15        THE COURT:  Thank you, Counsel.

16        Mr. Burrows, what, if any, statements do you wish

17   to make on your own behalf?

18        THE DEFENDANT:  Thank you, Your Honor.

19        THE COURT:  You can remain seated if you would

20   like.  You are free to stand up.  Either way.  Whatever is

21   more comfortable.

22        THE DEFENDANT:  Yes.  I agree with what

23   Mr. Christman has said.  I truly am sorry.  I can't imagine

24   how I found myself in this situation.  I have no excuses for

25   what I did.  I've always tried to lead a good life, moral

1    life, and I fell short again.  I have no excuse to make on

2    that count.

3              I will never, ever consider going down that road

4    again.  I just want to try to move forward.  I've had some

5    counseling over the last several months.  I have got -- shed

6    a lot of light on the industry that I was proliferating, and

7    I feel truly horrible about the things that are being done

8    to children, and I didn't make the connection at the time

9    that I now realize is going on.

10             THE COURT:  What do you mean you didn't make the

11   connection?

12             THE DEFENDANT:  Well, I didn't really think that

13   since what I was viewing was potentially -- like things that

14   had been on the Internet.  It wasn't really any abuse -- I

15   should say, I didn't feel like the children were

16   being abused, but in hindsight, I see how they were being

17   manipulated.

18             THE COURT:  You didn't see how they were being

19   abused?

20             THE DEFENDANT:  Excuse me, Your Honor.  By viewing

21   what I was viewing, I didn't realize I was feeding another

22   part of that industry that is truly -- and it's all

23   horrible, but I didn't really make that connection.

24             THE COURT:  You sought this out.  I mean, this is

25   not something you came upon by accident.  You actually

                Lori A. Callahan, RMR-CRR      (330) 252-6022

1    sought it out.

2          THE DEFENDANT:  Yeah.  I think that, at the time,

3    I was viewing quite a lot of pornography of all genres and

4    it was just -- I cast a wide net, and I got caught up in the

5    girls that were underaged as modeling and, again, being

6    naive to the world -- the way that thing, I didn't really

7    realize the darker aspects, but it's all kind of intertwined

8    in that regard, sir.

9          THE COURT:  All right.  Thank you.

10          Counsel for the government, do you have any

11    argument you would like to make?

12          MR. DECKERT:  Yes, Your Honor.  Thank you.

13          Your Honor, this court must fashion a sentence for

14    Mr. Burrows in accordance with Title 18 of the United States

15    Code, Section 3553(a).  And, of course, this court must

16    start with the guidelines.  It's a benchmark, which strives

17    to provide this court guidance.  It is not bound by its

18    findings, but it is illustrative of an appropriate sentence.

19          And the argument that is often put forth and put

20    forth today that somehow the enhancements and guidelines as

21    applicable to Mr. Burrows catch all or the majority of

22    defendants charged with these offenses, and I would say that

23    actually the guidelines pretty accurately depict what

24    Mr. Burrows did in this case.

25          He received a two-level reduction for not

1    distributing.  It's true that we found no evidence of

2    hands-on violations.  There's a specific offense

3    characteristic of plus five enhancement if he did.

4            So the guidelines provide for the worst of the

5    worst and trying to capture what exactly the offense and the

6    nature and circumstances of the offense.  In this case, the

7    sheer amount of material that was discovered on a variety of

8    devices possessed by Mr. Burrows is also truly staggering.

9            There were 9,595 -- I'm sorry, 5,678 unique

10   images, 52 videos.

11           Additionally, Your Honor, as I set forth in my

12   sentencing memorandum, there's 167,713 additional images of

13   child exploitive, but not child abuse material, and

14   essentially what that means is there was child erotica and

15   child age difficult images.  So it was not classic child

16   abuse material.  That was clear that these were children

17   under the age of 12.  And the child erotica, again, is what

18   Mr. Burrows is describing the, you know, the modeling of

19   children.

20           With regards to the four-level enhancement for

21   sadistic and masochistic infant toddler, again, I take

22   exception to Mr. Burrows' statement that he didn't know that

23   there was abuse going on with that kind of material, where

24   you have 1,536 images involving infant toddlers, 1,254

25   images involving sadistic or masochistic or violence.

1          I believe that anyone would know that that

2    involves abuse.  So I would take exception to that

3    statement.

4          So I think laying all that out, the nature and the

5    circumstances, these guidelines actually do take into

6    account his behavior.  It does provide a downward departure

7    for certain -- the lack of certain conduct.  I think

8    Congress and the guidelines have set this forth.  After much

9    consideration and deliberation, they've received reports

10   from experts, tried to consider all the ramifications of

11   these laws.

12         I think this sentence is appropriate as calculated

13   by the presentence report.  That is why the government is

14   asking for a sentence within the guidelines of 97 to 121

15   months.

16         THE COURT:  Thank you.  97 to 121 months?

17         MR. DECKERT:  I believe that's offense level 30,

18   Criminal History Category I.

19         THE COURT:  All right.  You are correct.  I was

20   looking at 33.  I was looking at offense level 33 earlier,

21   135 to 168.  With the deduction, it is 97 to 121 months.

22         All right.  Thank you.

23         MR. CHRISTMAN:  Your Honor, before the court

24   imposes sentence, may I attempt to clarify one thing on

25   behalf of my client?

1      THE COURT:  Sure.

2      MR. CHRISTMAN:  I don't believe that what he was

3   saying is that -- that what he was viewing was not abusive

4   to children.  He clearly knows that.  I believe that what he

5   was saying, and based on the counseling and learning about

6   child pornography and what creates demand for additional

7   images by those who produce it is that his viewership feeds

8   that industry to create new images.  And that is what I

9   believe that he was attempting to articulate to the court.

10  I know what the government said that he didn't know that it

11  was abuse.  I don't believe that that's what he intended to

12  convey.

13      I know it was inarticulate, but in the seven

14  months of representing Mr. Burrows and getting to know him

15  and discussing this type of activity, he certainly knew and

16  understands that that is abuse of children.  Anybody who saw

17  it would certainly understand that.  So just by way of

18  clarification, I don't believe that that's what he was

19  saying.

20      Thank you, Your Honor.

21      THE COURT:  All right.  Thank you.

22      Would you approach real quick?

23      (Pause.)

24      THE COURT:  For the record, the court would note

25  I've carefully considered the matter.  I have reviewed the

1    arguments of counsel, both sides, as set forth in the

2    sentencing memoranda.  I will comment upon it briefly as I

3    go through and make my findings.

4         In terms of -- we begin with the nature and the

5    circumstances of the offense.  Mr. Burrows made

6    approximately eight purchases from Website M between

7    February 3, 2018 and April 16, 2018.  Website M is a

8    feed-based website that sells files and containing images

9    and/or videos of child pornography.  And it was further

10   revealed that Mr. Burrows received 11 additional E-mails

11   from Website M from August 15, 2017 to August 27, 2018

12   confirming orders for child pornography were placed.

13        On April 16, 2019, a search warrant was executed

14   at Mr. Burrows' business, Profix Collision, in Elyria, Ohio,

15   along with his residence in Elyria.

16        As a result of the search warrants, Mr. Burrows

17   was found in possession of 9,595 images and 52 videos of

18   child pornography.  The longest video file depicting child

19   pornography was approximately 48 minutes in length.  The

20   shortest video was 47 seconds in length.  The total length

21   of the video files depicting child pornography was six hours

22   and 14 minutes.  Two of the videos and 163 images depict

23   infant/toddler aged children.  And 75 of the images depict

24   children involving in S&M violence.

25        And the examples of the child pornography are set

1    forth in the presentence report at page 6, paragraphs A, B,

2    C, D and E.

3            In terms of the history and the characteristics of

4    the defendant, he's 58 years old.  He has three prior

5    convictions.  None of them are felony convictions.  Two are

6    alcohol related, and those are somewhat dated, or at least

7    the first occurred in 1998.  The second was in 2013, and the

8    domestic violence issue was in 2001.

9            Mr. Burrows indicated he had a positive childhood.

10   He was always provided with necessities.  He was raised in a

11   close-knit family.  He was married in 1994 and separated in

12   October of 2018.  As of the writing of the PSI, the divorce

13   is still pending.  There are three adult children.  Mr. and

14   Mrs. Burrows were parents of three adult children I should

15   say.

16           In terms of health-related issues, the defendant

17   had a hip replacement in April of 2019.  He had a cardiac

18   ablation some years ago, and he currently is not taking any

19   medication.  He was diagnosed with attention deficit

20   disorder in 2018.  Apparently he's been attending counseling

21   for sex offender treatment here recently.

22           He graduated from high school.

23           He has had some experimentation with drugs in the

24   past, and he's had some use of marijuana here somewhat

25   recently as of April, 2019 according to the report.

                Lori A. Callahan, RMR-CRR      (330) 252-6022

1            In terms of the need for the sentence imposed --

2    let me turn to sentencing disparities.  There are sentencing

3    disparities which do occur in these cases due to different

4    judges' views of the serious nature of this conduct around

5    the country, some who I think are seriously misguided, focus

6    too much on the defendants and not on the victims at all,

7    and, candidly, don't, at least in my view, have a full

8    understanding of the harm that this type of offense causes

9    to the public, as well as our children, including children

10   as young as infants as we see in this case.

11           So I deem it to be a serious matter.  I deem the

12   guidelines to be appropriate, and I think Congress has

13   spoken.  I think the guidelines serve a useful purpose and

14   deterrence.  More about that later.

15           According to this PSI, for fiscal year 2018, the

16   sentence involving child pornography with Criminal History

17   Category I is 89 months, which is not far from the low end

18   of the guidelines here.

19           In terms of the need for the sentence imposed, a

20   guideline sentence is appropriate here.  I've reviewed the

21   sentencing memorandum by the defendant and by the

22   government.  There are many studies.  Many of them offer

23   different views about the risks and the dangers of offenders

24   of this nature.  Clearly, offenders of this nature pose a

25   risk because they feed the market and the market for child

1    pornography.

2         Here we have a purchase of child pornography, and

3    that obviously means that this is a defendant who sought out

4    this type of activity.  There are very many aggravating

5    factors in this case.

6         First, some of the videos of child pornography

7    that Mr. Burrows possessed were lengthy.  One video is

8    approximately 48 minutes in length.  Second, 163 of the

9    images and two of the videos of child pornography depicted

10   infant, toddler-aged children.  Third, 75 of the images of

11   child pornography depicted children involving in S&M

12   violence.

13        Lastly, when by Mr. Burrows was interviewed by the

14   agents on April 16, 2019, initially he denied looking at

15   child pornography.  Some of his other statements before he

16   requested counsel are also troubling.  The defendant

17   replied, and I refer to paragraph 12, is referenced in the

18   report.  The defendant replied he didn't think it was porn.

19   "I just didn't look at it as porn."  When the agent asked

20   what he meant by "It," he stated, "Naked images of young

21   women."

22        Without being asked, the defendant stated, "Well,

23   the age of consent in a lot of states is like 15 or 16 years

24   old.  Not that I've ever had sex with a child, but anyways,

25   just throwing it out there."

Lori A. Callahan, RMR-CRR        (330) 252-6022

1        The agent asked the defendant how he knew the age

2    of consent and he replied, "It's in popular culture."  And

3    then the defendant went on to state that the youngest child

4    he seen in nude images and/or was asked, and he stated, "By

5    mistake, there have been some young ones, maybe nine or

6    ten."

7        He terminated the interview by requesting counsel.

8    Clearly, that's not the case.  Clearly, that's not being

9    truthful.  Clearly, in my opinion, the defendant doesn't

10   understand, fully understand, that this is serious in nature

11   and this conduct is the kind of conduct that must be

12   obviously deterred.

13       So having said those things, I will impose a

14   guideline sentence.

15       Pursuant to the Sentencing Reform Act of 1984, 18,

16   Code 3553(a), I will impose a sentence of 97 months, it's

17   the low end of the guidelines, to be served on each count

18   concurrently.

19       The defendant will be placed on supervised

20   release.  At this point, I believe a lengthy period is

21   necessary based on the reasons I've just stated.  Some of

22   his responses are concerning to the court as to whether he

23   fully understands the harm, the serious harm, as well as the

24   extent of his collection.  The sheer volume indicates

25   someone who must be supervised and must be certain that they

1    are receiving the appropriate treatment to prevent any

2    recurrence.

3            So I will impose a term of 15 years.  It is an

4    upward variance from the guidelines in terms of supervised

5    release.  I think that is necessary and needed, again, for

6    the reasons I've already stated.

7            In terms of fine, I will waive the fine, given the

8    fact that the defendant is going to be required to pay the

9    Justice for Victims of Trafficking Act assessment of $5,000

10   per count.  It's $15,000 in total.  He does have the ability

11   to pay that either now and also into the future.

12           A special assessment of $300 will also be imposed.

13           Mandatory drug testing.  I will at least initially

14   impose it based upon his use of marijuana.

15           And I will also order the collection of DNA as

16   directed by the probation officer.

17           And the defendant will participate in a sex

18   offense specific assessment.  He's required to register

19   pursuant to the Adam Walsh Act.

20           Sir, you will be required to register under the

21   Sex Offender Registration Notification Act, we call it

22   SORNA.  Comply with the act as directed by your probation

23   officer.  You must keep your registration current in each

24   jurisdiction in which you reside or are employed or as a

25   student.  And you must no later than three days or business

1    days after you change your name, residence, employment or

2    student status appear in at least one jurisdiction to which

3    you are registered and inform that jurisdiction of all

4    changes and reporting information.  And failure to report

5    may be a violation of your conditions of supervised release

6    and a new federal offense punishable by up to ten years.

7            You will submit to periodic polygraph testing at

8    the discretion of your probation officer to make certain you

9    are in compliance with the terms of your treatment plan.

10           You will undergo specific treatment, sex offender

11   specific treatment, and participate in following all the

12   rules and -- of that program.

13           You must allow your probation officer to install a

14   computer monitoring software on any computer that you have

15   and that you use, and to insure compliance with the computer

16   monitoring condition, you must allow the probation officer

17   to conduct initial and periodic, unannounced searches of any

18   computers that are subject to this computer monitoring.

19           And the searches will be conducted for the purpose

20   of determining whether you are using the computer for any

21   improper purposes in violation of the terms of your

22   supervised release, and to make certain there's no terms or

23   no attempts to circumvent the monitoring software.  And you

24   need to let anyone else who's using your computer know that

25   that search may take place.

1          You cannot associate with minors, verbal, written

2     telephone or electronic communication with any person under

3     the age of 18 except in the presence of a parent or legal

4     guardian or on the condition that you notify the parent and

5     legal guardian of your conviction.  This does not encompass

6     persons under the age of 18 such as waiters, cashiers,

7     ticket vendors, et cetera, who you need to deal with to

8     obtain ordinary and usual services.  You cannot frequent or

9     loiter within 100 feet of school yards, playgrounds, theme

10    parks, arcades, swimming pools, skating rinks, stores,

11    places where persons under the age of 18 play, congregate or

12    gather, without the prior expressed written approval of your

13    probation officer.

14          And your residence and employment must be approved

15    by your probation officer, as well, and that is in advance,

16    so you must advise the probation officer at least 21 days

17    prior to any intended changes.

18          And lastly, you will submit your house, residence,

19    vehicle, papers, computers as defined under the statute, any

20    other electronic communications, data storage devices, to a

21    search conducted by your probation officer at a reasonable

22    times and in a reasonable manner.  If you fail to do that,

23    that might be grounds for revocation of supervision and a

24    possible return to custody.

25          Does the government have any objection to

1    self-surrender at this point?

2              MR. DECKERT:  Your Honor, yes.  We would ask that

3    he be taken into custody today.

4              THE COURT:  Counsel?

5              MR. CHRISTMAN:  Your Honor, my client's been fully

6    compliant over the last seven months with conditions of his

7    bond.  We would ask that he be able to self-report.

8              THE COURT:  I think having imposed sentence, that

9    it's time to begin custody.  I think he should -- knowing

10   what I know about the case and the facts and circumstances,

11   he will be remanded to custody.

12             Thank you very much.

13             MR. CHRISTMAN:  Your Honor, objection under

14   Bostic.

15             THE COURT:  Thank you very much for calling it to

16   my attention.

17             Under U.S. versus Bostic, any objections,

18   corrections, any arguments that not have been previously

19   raised that I can address?

20             Counsel for the government?

21             MR. DECKERT:  Not on behalf of the government,

22   Your Honor.

23             THE COURT:  For the defendant?

24             MR. CHRISTMAN:  Your Honor, we object under Bostic

25   with respect to not granting variance for 3553(a) factors,

1    the arguments outlined in the sentencing memorandum, and the

2    upward departure on the supervised release.

3          THE COURT:  So noted.  I have reviewed the

4    briefing and the arguments raised by both sides.  I don't

5    believe a downward variance is warranted in this case for

6    the reasons I've just stated.  I will restate it.

7          The sheer volume and numbers of images the

8    defendant possessed, as well as the videos, the nature of

9    same, including infant children, as well as the comments

10   that he made here in open court, as well as comments that he

11   made to the arresting officers indicate to me someone who

12   may not have a full understanding of the serious nature of

13   his conduct.

14         That also supports a period of supervised release

15   above and beyond the statute, statutory, I should say, above

16   and beyond the guideline range, because that will enable the

17   court to make certain that he's properly supervised and

18   receives necessary treatment in the community, as ordered by

19   the court.

20         And so I believe the additional upward variance as

21   to the supervised release is warranted.  Additionally, I

22   believe it's warranted as in some respects the court imposed

23   a low end of the guidelines, in this case, even though there

24   may be an argument for a higher guideline sentence.

25         So for those reasons, I will note your objection

1    and I will overrule them, or at least supplement my

2    findings.

3           Mr. Burrows, if you would like an appeal filed

4    from the court's sentence, that's something you can discuss

5    with Mr. Christman.

6           Any notice of appeal must be filed no later than

7    14 days after I reduce your sentence to writing.  We will

8    provide you the necessary papers if you are indeed indigent,

9    don't have sufficient funds for the appointment of an

10   attorney, or sufficient funds to retain an attorney, I

11   should say.  Otherwise, we would appoint an attorney upon

12   proper showing that you are without money to pay an

13   attorney.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Any notice of appeal has to be filed

17   no later than 14 days after I put up an order setting forth

18   your sentence.  Mr. Christman will advise you further.

19          Thank you very much.  That will be the court's

20   order.

21

22

23

24

25

                Lori A. Callahan, RMR-CRR      (330) 252-6022

1                           C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.

6

7               s/Lori A. Callahan
                Lori Ann Callahan, RMR-CRR
8               U.S. District Court, Suite 568
                2 South Main Street
9               Akron, Ohio844308
                (330) 252-6022
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25